UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case Number: 22-80173-CR-Cannon

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

GREGORY MALCOLM GOOD,

     Defendant.

_____/

**SENTENCING MEMORANDUM AND MOTION**
**<u>FOR VARIANCE PURSUANT TO SECTION 3553(a)</u>**

Pursuant to the factors contained in 18 U.S.C. 3553(a), the Defendant would respectfully request this Honorable Court to determine a variance from the Advisory Sentencing Guidelines and sentence the Defendant to less than those guidelines. To briefly outline the legal background which properly acknowledges the vast discretion of a sentencing United States District Court at a time a Defendant stands before this Honorable Court for sentencing, undersigned counsel would briefly state as follows:

The Supreme Court and numerous Circuit Courts across the country now encourage sentencing courts to exercise their discretion in imposing a justice and fair sentence. See *Spears v. United States,* 555 U.S. 261 (2009); *Rita v. United States,* 551 U.S. 338 (2007); *Kimbrough v. United States,* 552 U.S. 85 (2007); *United States v. Booker,* 543 U.S. 220 (2005). In the sentencing courts exercise of its discretion to fashion an appropriate sentence "the sentencing judge [should] consider every convicted person as an individual and every

case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States,* 518 U.S. 81, 113 (1996).

*Booker* and its progeny urged a sentencing court to impose a sentence in accordance with the factors set forth in 3553(a), recognizing that the advisory United States Sentencing Guidelines "now serve as one factor among several that the Courts must consider in determining an appropriate sentence." *Kimbrough,* 552 U.S. at 90.

Concominently, there is no presumption that any Guidelines Range in and of itself is per se reasonable; instead, the sentencing court itself "must make an individualized assessment based on the facts presented", *Gail v. United States,* 552 U.S. 28 (2007) at 50. The Supreme Court has specifically found that in balancing the Section 3553(a) factors, a District Court may determine that, "in the particular case, a within-guideline sentence is 'greater than necessary' to serve the objectives of sentencing". *Kimbrough,* 552 U.S. at 91. As specifically contained in 18 U.S.C. §3553(a), the fundamental principle of sentencing is that a Court "shall impose a sentence sufficient, but not greater than necessary" to meet specific Guideline goals, including the goal of just punishment. Therefore, if a District Court were to conclude that there was a sentencing option which, pursuant to the Statutory purposes of 3553 which is significantly lower than the Advisory Sentencing Guidelines, then the Court has the discretion, the power, and the wherewithal to fashion a sentence utilizing those factors wherein the Advisory Sentencing Guidelines are only one of many. *United States v. Ministro-Tapia,* 470 F.3d 137, 142 (2nd Cir. 2006). A lengthy term of imprisonment is "not an appropriate means of promoting corrections and rehabilitation" in every case that would come before this Honorable Court.  18 U.S.C.

2

§3582(a).  .  Under this backdrop and history of the law, it is respectfully submitted to this Honorable Court that although this is a very serious offense, the specific circumstances that bring Mr. Good to this Honorable Court for his sentencing hearing support a downward variance from the advisory Sentencing Guidelines.

## <u>DEFENDANT'S HISTORY AND FACTS OF THE CASE</u>

1.   The Defendant, Gregory Good, having pled guilty to the charges in the Indictment and with no plea agreement and no factual objections to the Presentence Investigative Report, findings of Advisory Sentencing Guidelines, faces this Honorable Court for sentencing with an Advisory Guideline Range of 292 to 365 months in Federal Prison.

2. The Defendant, is an elderly gentleman, almost 75 years of age.

3. Mr. Good has raised six children and worked as an engineer to provide for his family.

4.   In his later years, the Defendant has suffered from several medical conditions, including heart ailments, high blood pressure, and severe depression.

5.   In the last few years the Defendant relocated with his wife to a small town in Nevada.  He lived there, with his wife, with no friends nor family surrounding him.  He was isolated with his wife in that home and all of his extended family were thousands of miles away.

6.  It is during this time that the Defendant's severe depression became worse and he started using the internet as a source of communication with the outside world.  It is there, in the last few months of his wife's life, that he found solace in the internet and

committed the crimes that he has pled guilty to and is facing this Honorable Court at his sentencing hearing.

7.  After he moved from Nevada and became involved in the website, before her death, he admitted to his wife that he was viewing child pornography on the website.  This further exacerbated the distance between the two of them, several months before he death. After she died, he was even further isolated by himself, in a home thousands of miles from any family and friends that he may have had all his life.

8.  At the age of 75, the Defendant does not retain a long-life expectancy.  He is facing a 15 year minimum mandatory, which this Court is without discretion to sentence below.  At a sentence like that, even with modest amounts of good time credit, he will be close to 90 years old when he is eligible to face what little life he may have on supervised release as a registered sex offender and under the stringent requirements facing such a registered sex offender.

9.  The Defendant, under the Sentencing Guidelines, is facing at the low end, about 25 years in Federal prison.  That would have him be approximately 100 years old if this Honorable Court were to sentence him to the low end of the Guidelines.

10.  There are factors here, when analyzed under §3553(a) that would moderate the need under the framework of §3553(a), for the Defendant to serve more than the 15 year minimum mandatory that Congress created for the crime that he pled guilty to.

11.  It is respectfully requested that this Honorable Court utilize Your Honor's discretion, and sentence the Defendant to the 15 year minimum mandatory, so that he may

have some hope that he may spend a few months outside of the Federal prison, to be reunited with his family before he perishes.

12.  The Defendant has a military service record of approximately 6 years in the army.  Sometime during that time, in training exercises, he had a large caliber machine gun blow up in very close vicinity to his head, and he lost his hearing in one ear.  He has an unblemished career in the military and was discharged honorably.

13.  The Defendant has a history of both service to his community, being very active in the sports leagues of his children and community activities.

14.  In fact, the Defendant's life, it is respectfully requested, should be analyzed in balancing the terrible nature of the crimes that he has committed and pled guilty to, with the rest of his over 7 decades of unblemished life, with no prior criminal history or record.

15.  In the framework of the §3553(a) factors, it is respectfully submitted that there is room for some modicum of compassion from this Honorable Court, even when analyzing such a serious and reprehensible crime that the Defendant has been a part of.

16.  The Defendant did not create the website, he did not set up the way it worked, he did not profit by its existence, but in fact gave money to the people that were the actual leaders of the website while he was involved in it.

17.  Further, although the undersigned is not minimizing in any way, the seriousness of the crimes that he has pled guilty to and committed, nevertheless, he did not have any direct contact with children nor is accused in any way of the actual molestation of children or actual contact with them.

18.   The Defendant's family has liquidated his assets, which include an amount of equity in the home where he lived in Nevada and a modest bank account.  He is virtually penniless now, after paying for his legal fees and the costs of moving his personal belongings back from Nevada to his family's home in Kentucky.

In United States v. R.V., (No. 14-cr-0316 (E.D.N.Y. Jan. 22, 2016)(Weinstein, J), the court outlines a comprehensive and persuasive discussion about how the sentencing guidelines for child pornography are excessively high for a case involving possession and distribution of child pornography, particularly if the material was possessed and distributed through a peer-to-peer network.  The 101 page opinion concludes that the punishment enhancements under the child pornography sentencing guidelines are not warranted given the level of culpability for a defendant that is able to possess the illegal material through the internet.  The opinion also cites multiple studies regarding the low dangerousness of defendants convicted of child pornography possession over the internet.  The opinion also cites multiple studies regarding the low dangerousness of defendants convicted of child pornography possession over the internet.  The following points summarize some of the reasons given by the R.V. opinion for why the guidelines enhancements result in excessive punishment for peer-to-peer users. [1]

---

[1]In R.V., the Defendant used a peer-to-peer file sharing network to search obtain and view images and videos of child pornography.  He also used peer-to-peer software to engage in video conversations with teenage females in "chat rooms" to engage in conversations in a "sexual manner".  When agents executed a search warrant they found files in his computer and in thumb drives containing illicit images and videos of child pornography including

**a)     Nature of the technology in the possession of child pornography offense.**

The R.V. opinion notes that child pornography images are readily available through every internet technology and has become much easier to acquire over the internet with only a few clicks of the mouse, compared to printed pornography or DVD's which would require more time and effort to obtain. "The intensity of deviant sexual interest is likely to be greater in those who need to expend more effort to acquire pornography from sources other than the internet." (14-cr-00316, at p. 44)

Peer-to-peer networks are a relatively recent technological development that allow users to download files from computers of other users and do not require using chat room or emailing others.  No personal contact is required between the provider and receiver.  I.d. at 47 (citing Maggie Muething, Inactive Distribution: How the Federal Sentencing Guidelines for Distribution of Child Pornography Fail to Effectively Account for Peer-to-Peer Networks, 73 Ohio St. L. J. 1485, 1487-88 (2012)).  These networks operate by directly connecting network participants to one another with use of a centralized server. Id. At 47 (citing Audrey Rogers, From Peer-to-Peer Networks to Cloud Computing: How Technology is Redefining Child Pornography Laws, 87 S. Johns' L. Re. 1013, 1031 (2013). A user "need only download the compatible software from the internet to become part of the network and be able to download digital files from other members of that network" or upload or post files to the network.  Id. At 47, (citing Rogers, supra.)  "A crucial aspect of

---

minors under the age of 12.  The court sentenced the Defendant to a non-incarceration sentence with seven years of strict supervised release and treatment.

peer-to-peer file sharing is that the default setting for these networks is that downloaded files are placed in the user's 'shared' folder, which allows others in the network to access the files.  A user must affirmatively change his network setting to disable this sharing feature.  The network is designed to encourage sharing by providing faster downloading if the user allows sharing."  Id. At 47-48 (citing Rogers, supra. at 1031).

According to the Sentencing Commission, most of the offenders who are found to "distribute" child pornography are "solely engaged in 'impersonal' anonymous distribution by using an 'open' [peer-to-peer] program such as LimeWire, with no two-way communication between the offender who distributed and persons who obtained images or videos from the offender's computer."  Id. At 48 (citing U.S. Sentencing Comm'n, Federal Child Pornography Offenses, at 150-51.)  The rate of offenders who use peer-to-peer file sharing to access child pornography has continued to increase in recent years.  Id. At 48 (U.S. Sentencing Comm'n, supra. At 166).

**b)     Low risk of contact sexual offending and low rate of recidivism.**

There is no indication that a Defendant who obtained child pornography on a peer-to-peer network poses a risk of hands on contact.  R.V. points out that "several reports have found that generally child pornography offenders are 'at low risk to commit hands-on sexual assaults of children.'"  Id. at 54-44 (citing Austin F. Lee, et al, Predicting Hands-On Child Sexual Offenses Among Possessors of Internet Child Pornography, 18 Psych, Pol. & Law 644, 668 (2012).  RV also noted that:

W]hile child molesters may possess child pornography, those that possess child pornography are generally not likely to engage in contact offenses against children. Instead, child molesters are merely a small subset of child pornographers.  Or another way

to look at it is that child molesters and child pornography offenders are two groups with occasional overlap in membership. . . Contrary to what may appear logical, the correlation between pedophilia and sexual contact offenses against children is not very strong.

Id., at 55, (quoting Hamilton, The Efficacy of Severe Child Pornography Sentencing: Empirical Validity or Political Rhetoric? 22 Stan L. Pol'y Rev. 545, 580-81 (2011) (Emphasis added)

Recent research suggests that recidivism rate of child pornography offenders may be low, with most child pornography viewers unlikely to engage in future sexual offenses. Id. at 55, (Citing Richard Krueger & Meg Kaplan, Non-Contact Sexual Offenses, Exhibitionism, Voyeurism, Possession of Child Pornography, and Interacting with Children over the Internet (Unpublished manuscript) describing a study of child pornography offenders by Seto, Hason & Babchishin, revealing that 4.6 percent of online offenders committed a new sexual offense during the 1.5 to 6 year follow-up period: 2.0 percent committed a contact sexual offense and 3.4 percent committed a new child pornography offense.

R.V. also cites the Sentencing Commission's report Federal Child Pornography Offenses' recidivism study of 610 non-production offenders which showed that the offenders' "general recidivism rate . . . was 30.0 percent during an average follow up period of eight and one-half years after offender's reentry into the community" while the offenders' "known sexual recidivism rate, a subset of the general recidivism rate, was 3.6 percent." Id. At 56, (See Sentencing Comm'n Federal Child Pornography Offenses at 310.)

c)      **The Sentencing Commission recommends lowering the child pornography guidelines for possession cases.**

The R.V. opinion points out that the United States Sentencing Commission has "voiced concerns with respect to the current Guidelines' ability to reflect varying degrees of culpability given the impact of recent technological changes on the offense of child pornography," and that the Commission actually recommended that the non-production child pornography sentencing scheme should be revised to account for recent technological changes in offense conduct and emerging social science research about offenders' behavior and histories, and also to better promote the purpose of punishment by account for the variations in offenders' culpability and sexual dangerousness." Id. At 85, 87-88 (citing Sentencing Comm'n Federal Child Pornography Offenses at xvii.)

The Commission's report, Federal Child Pornography Offenses, completed in 2012, was a multi-year examination of "offenders sentenced under the federal sentencing guidelines and corresponding penal statutes concerning child pornography offenses." Id. At 86, (U.S. Sentencing Comm'n, Federal Child Pornography Offenses, at I).   The Commission was especially concerned with the guidelines applicable to non-production child pornography offenses and the extent to which they managed to meaningfully distinguish among different offenders' level of culpability." Id. at 86.

One of the factors prompting the Commission to conduct this examination is particularly relevant to the problem with the sentencing guidelines in the instant case:

Third, as a result of recent changes in the computer and internet technologies that non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degree of culpability. Non-

production child pornography offenses have become almost exclusively internet-enable crimes: the typical offender today uses modern internet-based technologies such as peer-to-peer ("P2P") file-sharing programs there were emerging a decade ago and now facilitate large collections of child pornography.  The typical offenders' collection not only has grown in volume but also contains a wide variety of graphic sexual images (including images of very young victims) which are not readily available on the internet.  <u>As a result, four of the six sentencing enhancements in § 2G2.2 – those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 offense levels – now apply to most offenders and, thus fail to differentiate among offenders in terms of their culpability.</u>  These enhancements originally were promulgated in an earlier technological era, when such factors better served to distinguish among offenders.  Indeed, most of the enhancements in § 2G2.2, in their current or antecedent versions, were promulgated when the typical offender obtained child pornography in printed form in the mail.

<u>Id.</u> at 86-87, (quoting U.S. Sentencing Comm'n, <u>Federal Child Pornography Offenses,</u> at i-ii, (emphasis added) (footnotes omitted.)

There are cases containing the numerous district court decisions around the country, cited by the <u>R.V.</u> opinion, which have expressed disapproval for the guidelines sentence for child pornography offenses.  The Appendix also contains cases cited by <u>R.V.</u> where defendants convicted only of possession offenses have received sentences with minimal or no incarceration.  Additionally, below are cases where the Eleventh Circuit affirmed downward variances from child pornography Guidelines after the sentencing court has weighted the §3553(a) factors for a particular case.

In <u>United States v. McBride,</u> 511 F.3d 1293 (11th Cir. 2007) the Court affirmed a significant variance of 84 months that was a departure from 151 to 188 months.  The defendant in <u>McBride</u> was an admitted pedophile, who was convicted of distributing child pornography and found to be in possession of 981 images and 45 videos.  The sentencing

court viewed the defendant's personal history together with the defendant's clean record. Id. 511 F.3d at 1295.

In United States v. Gray, 452 F.3d 1323 (11th Cir. 2006) the court upheld 72 months from a sentence range that was 151 to 188.  The district court took into account the defendant's age, his prior minimal criminal record, and his medical condition.

In United States v. Halsema, 180 Fed.Appx. 103 (11th Cir. 2006), the Court upheld a sentence of 24 months for possession of child pornography that was half of the lower end of the guidelines range of 57 to 71 months.  Relying on expert testimony, the district court found that a longer sentence would negatively affect Halsema's rehabilitation and that a 24 month sentence "is sufficient to provide just punishment . . . and serves as an adequate deterrent to others."  Id. at 105.

**The factors of 18 U.S.C. 3553(a) warrant a sentence variance.**

The Defendant requests that this Court impose a downward variance sentence from the sentencing guideline range of 292 - 365 months.  With a few clicks of the mouse, file sharing programs allow for the Defendant to have access to child pornography without the least amount of contact with the producers and without discriminating the nature of the pornography or the volume.  As the Sentencing Commission report noted, offenses involving most computer usage offenders account for 13 offense levels and fail to differentiate among offenders in terms of their culpability.  (U.S. Sentencing Comm'n, Federal Child Pornography Offenses, at I-ii).  Furthermore, the studies cited above confirm that persons who commit the instant offense pose an extremely low risk of recidivism for this type of offense and a very low risk of committing any other sexual offenses.

The factors set forth in 18 U.S.C. §3553(a) warrant a variance from the guidelines range. The nature and circumstances of the offense and the history and characteristics of the Defendant were discussed above in connection with the current guidelines scheme.

Considering the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offenses, the sentencing guidelines are severe punishment for the Defendant's level of culpability and his lack of any history of sexual offenses. As discussed above, the need to protect the public would be very low given the low risk of danger to the public posed by defendants convicted of possession of child pornography. The Defendant's background and the nature of his offense, coupled with the fact that at the minimum mandatory 180 months, he will be over 90 years old when is released from prison, indicate he is a low risk of danger to the public. The need for deterrence for persons obtaining child pornography online does not warrant the guidelines sentence, and deterrence can be accomplished with a much less severe punishment. The need to provide the defendant with needed educational or vocational training or medical care would be better accomplished through the strict non-incarceration supervision, which courts have found to be more appropriate for persons such as the Defendant whose interest draws them to these images.

<u>The Disparate Nature of the Child Pornography Guideline</u>

A.    <u>U.S.S.G. §2G2.2:    The Child Pornography Guideline</u>.

It is respectfully submitted that the guidelines for child pornography cases are too high and the Court should consider for a sentence below the advisory guidelines. Indeed,

in the 2012 U.S. Sentencing Commission's Report to Congress regarding federal child pornography offenses, the Commission noted that "the current non-production guideline warrants revision in view of its outdated and disproportionate enhancements related to offenders' collecting behaviour as well as its failure to account fully for some offenders' involvement in child pornography communities and sexually dangerous behaviour. The current guideline produces overly severe sentencing ranges for some offenders, unduly lenient ranges for other offenders, and widespread inconsistent application." See, The U.S. Sentencing Commission's Report to Congress: Federal Child Pornography Offenses, (hereinafter "the report"), Ch. 12, p.331, (Dec. 2012), available at https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal- child-pornography-offenses.

> 1.    The Sentencing Commission admits that there are unwarranted and unfounded disparities in cases in which defendants are sentenced for non-production child pornography offenses.

Chapter 8 of the Report discusses in detail one of the major guideline problems, that is, the typical offense conduct now triggers multiple guideline enhancements and exposes most defendants to substantial penalty ranges. The result is that the guidelines fail to distinguish meaningfully among offenders in terms of culpability and dangerousness. (The Report, Chap. 8, p. 207.)

According to the Report, because the possession and distribution statutes trigger different base offense levels in the guidelines, they "provide substantially different ranges for two groups of defendants who engaged in substantially similar conduct found by

sentencing courts." (The Report, Chap. 8, pp. 215-216.) Because the difference between the guidelines is not rooted in any data or empirical evidence, this unwarranted disparity should be corrected at sentencing.

> 2.    Guidelines for non-production offenses are higher than the mean guideline minimum for three other sex offense types that involve actual or attempted sexual contact with a minor.

To illustrate the point that the non-production guidelines are disproportionately high, the Commission conducted a comparative proportionality analysis between the mean guidelines for §2G2.2 and other federal sex offenses that involve actual or attempted sexual contact with a minor. (The Report, Chap. 6, p. 136.) The Report found that the mean guideline for a §2G2.2 case is higher than the mean guideline minimum for the following three other sex offense types that involve minors:

> (1) traveling to engage in sexual contact with a minor 12 years old or older (USSG § 2G1.3 (Promoting a Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Transportation of Minors to Engage in a Commercial Sex Act or Prohibited Sexual Conduct; Travel to Engage in Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Sex Trafficking of Children; Use of Interstate Facilities to Transport Information about a Minor)); (2) abusive sexual contact with a minor (e.g., sexual fondling) (§ 2A3.4 (Abusive Sexual Contact or Attempt to Commit Abusive Sexual Contact)); and (3) statutory rape of a minor under 16 years of age (§ 2A3.2 (Criminal Sexual Abuse of a Minor Under the Age of Sixteen Years (Statutory Rape) or Attempt to Commit Such Acts)).

(The Report, Chap. 6, pp. 135-136.) Mr. Good's case does not involve the enticement of minors or an attempt to have physical contact with minors, a fact that should be considered in imposing a below-guidelines sentence in this case.

3.     Several enhancements under §2G2.2 and are no longer a meaningful way to distinguish or punish more egregious conduct.

Mr. Good received an enhancement for images depicting a prepubescent minor and an additional enhancement for use of a computer. (PSI Pgs 33, 34). These enhancements, as shown in the following figure taken from the Report, now apply to "virtually all non-production offenders," thus not providing any meaningful distinction or warranting enhanced punishment.



Figure 6-9
Application of Specific Offense Characteristics:
Non-Production Offenses
Fiscal Years 1992-2010

(Id. at p. 139).

Mr. Good also received an enhancement for sadomasochistic images, pattern of activity, as well as the maximum enhancement for number of images. (PSI ¶¶ er9). According to the Report, there has been a steady increase in the application of enhancements related to sadomasochistic images: in 2005, the enhancement applied in approximately 60 percent of cases, and by 2010, it applied in nearly 75 percent of cases. (Report, Chap. 6, p. 141.) Additionally, in fiscal year 2010, 96.9 percent of child

pornography defendants received an enhancement pursuant to §2G2.2(b)(7) based on the number of images that they possessed, and 69.6 percent received the maximum 5-level enhancement based on possession of 600 or more images. (Id.) Again, this empirical data demonstrates that the guidelines are generating arbitrarily high ranges that do not differentiate among conduct and offenders.    In   sum,   the   application   of   these enhancements does not demonstrate that Mr. Good is more culpable, more dangerous, or more deserving of punishment than the average non-production defendant, despite the fact that, combined, these enhancements add a total of 13 offense levels to his guideline computation.

The Report discusses ways to more meaningfully differentiate offenders based on offense conduct and potential dangerousness. (The Report, Exec. Sum. pp. xvii- xviii.) The Commission first recommends removing outdated measures of culpability discussed above. It further recommends focusing not only on the content of a defendant's child pornography collection but also "the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technologies," the degree of an offender's involvement in a "community" of other child pornography offenders, and whether an offender has a history of "sexually abusive, exploitative, or

    4.    The Court in this district recognize that the guidelines in non-production cases do not meet the purposes of punishment and routinely vary downward in cases presenting similar or worse facts than those in Mr. Good's case.

In *United States v. Carlo Demarco*, Case No. 10-cr-20261-KMM, the defendant pled guilty to one count of <u>distribution</u> of child pornography. His PSR calculated his sentencing guidelines to be 151-188 months, and the defendant requested a downward variance. Over the Government's objection, the court imposed a sentence of 60 months. The facts set forth in that defendant's proffer established that the defendant was using a publicly available file sharing program; and a forensic examination of that computer revealed at least 600 images and at least <u>101 videos</u> of prepubescent children engaging in sexually explicit conduct, including oral sex and penetration. Case No. 10-cr-20261-KMM (D.E. 46). Moreover, that defendant had his software configured to allow him to actively monitor not just which files of his were being downloaded, but who was downloading his files. (*Id.*).

In a case involving more than simple peer-to-peer distribution, *United States v. Diego Matrajt*, Case No. 12-cr-20343-RNS, the defendant pled guilty to one count of distribution and two counts of possession of child pornography, despite all indications that he was producing child pornography. (D.E. 40.) His PSR calculated his guidelines to be 210-262 months, the defendant requested a sentence of 60 months, and over the Government's objection, the court imposed a sentence of <u>120 months</u> as to each count to run concurrently. *Id.* That defendant not only had his computers password protected and encrypted, but he also had webcams secretly set up in his home, where he conducted photo shoots of children and captured videos of those children naked in his home. He possessed 50 homemade videos of this nature, in addition to at least another 40 sexually explicit

videos of minors. Id. Matrajt, who had numerous real children in his home and videoed them for his own sexual gratification, in addition to possessing and sharing sexually explicit videos of minors, received a sentence of 120 months.

In *United States v. Shawn Beauvais*, Case No. 12-cr-60067-RNS, the defendant, who pled to distribution, was found to have possessed over 4,000 pictures and over 1,700 videos, many of which involved infants and toddlers subjected to sadomasochism. The PSI calculated his guideline range to be 151-188, the defendant requested a 60-month sentence, and the Government, recognizing the defendant's medical needs, requested a sentence of 121 months. The Court imposed a sentence of 75 months.

In the case of *United States v. Riley*, 655 F. Supp. 2d 1298 (S.D. Fla. 2009), Judge King rejected the recommended sentencing range and sentenced the defendant to the statutory minimum term of 60 months. In rejecting the advisory guideline range of 210-262 months, the court noted that the guidelines are entitled to deference when the Sentencing Commission produces them in accordance with their institutional role and where the guidelines are the result of a study of empirical data; however, the court concluded that little deference is owed to the guideline for child pornography cases since these guidelines did not exemplify the Sentencing Commission's exercise of its characteristic institutional role and empirical analysis:

> [T]he guideline has been steadily increased despite evidence and recommendations by the Commission to the contrary. Congress has repeatedly amended it directly, ostensibly to target mass producers of child pornography and/or repeat abusers of children, a class of offenders that make up less than 5% of those affected by the changes...Between 1994 and 2007,

the mean sentence in child pornography cases increased from 36 months to 110 months...[T]his increase was not the result of the empirical approach often used by the Commission, designed to be an expert body on sentencing...These amendments [increasing sentence ranges] destroyed some of the careful distinctions the Commission had drawn between true peddlers of child pornography and more simple possessors or transporters.

*Id.* at 1301 (quoting *United States v. Hanson*, 561 F. Supp. 2d 1004, 1010-11 (E.D. Wis. 2008)). Also, the court discussed at length that due to arbitrary upward increases in the base offense levels for child pornography and the near-automatic application of numerous specific offense enhancements (i.e., distribution, use of a computer, prepubescent victims and number of images), rarely, if ever, will a defendant score at the low end of the statutory range. Many other courts in this district have varied downward in distribution and receipt cases. See, e.g., *United States v. John Jerrold Collier*, Case No. 18-cr-20095-PCH (court-imposed sentence of 80 months in case involving over 20,000 photos and more than 500 videos, where defendant pled to receipt but factual proffer established distribution); *United States v. Mael Yves Crespin*, Case No. 18-cr-20250-KMW (court imposed below-guideline sentence of 65 months, where defendant joined online chat group for purpose of exchanging child pornography); *United States v. Taylor Lyon*, Case No. 15-cr-20893-UU (court varied from advisory range of 97 to 121 months to the mandatory minimum of 60 months); *United States v. Matthew Clark*, Case No. 11-cr-14064-DLG (in case involving peer-to-peer sharing of files, the Court varied from the advisory guideline range of 151-188 months to impose a sentence of 66 months); *United States v. Nat Lane*, Case No. 10-cr-14061-JEM (Court varied from 151 months to a sentence of 108 months); *United States*

*v. Mehrdad Sarlak*, Case No. 11-cr-20078-JLK (Court varied from 151-188 months to a sentence of 60 months); *United States v. Walkenhorst,* Case No. 18-cr-60093-WPD (Court sentenced Defendant to 5 years' Probation in a child pornography case). Such local sentencing trends mirror a larger national sentencing trend in Child Pornography cases:



**Figure 6-8**
**Average Guideline Minimum and Sentence Imposed:**
**R/T/D Offenses**
**Fiscal Years 1992-2010**

(Report, Ch. 6, p.135).

Much of the recent research that was relied upon by the Sentencing Commission in the review of guidelines for child pornography crimes draw an important distinction between possession offenders and contact offenders. The reports generated by these studies suggest the possession offender is less likely for recidivism than the contact offender. In the report prepared for the Sentencing Commission in 2012, Child Pornography Offender Characteristics and Risk to

Reoffend, Royal Ottawa Health Care Group, Michael C. Seto, there is "...confirmation that online sexual offenders differ from conventional sexual offenders in meaningful ways." which suggests "...that online offenders may pose a lower risk to reoffend overall than contact offenders."  The report concluded in a study of mostly online child pornography offenders for 3 1/2 years "…the recidivism rates were relatively low compared to the average recidivism rates found for contact sexual offenders."  (E.g., Hanson & Morton-Bourgon, 2005).

Based on Mr. Good's history and characteristics, the punishment ranges established by Congress, the unreasonableness of the advisory guideline range and the Sentencing Commission's own recommendations, and the 18 U.S.C. § 3553 factors, it is respectfully submitted that the Court should sentence Mr. Good to no more than 180 months in prison.

<u>CONCLUSION</u>

Undoubtedly, the Court will punish Mr. Good for his conduct in the instant offense. However, no sentence will take away the embarrassment and disappointment he has caused his family and those closest to him. No sentence can replace the forever stigma of being a registered sex offender for the rest of his life.  Understanding all of this, Mr. Good is optimistic for his future. He is confident that with perseverance, his remorse for his conduct, dedication to himself and his family, and proper treatment he will overcome these obstacles and if able, spend the last years of his life with his family. For all these reasons, Mr. Good moves this Honorable Court for a sentence this is "sufficient but greater than necessary" to achieve the purposes set forth in sentencing.

Respectfully submitted,

/s/ James S. Benjamin
JAMES S. BENJAMIN, Esquire
Benjamin, Aaronson, Edinger & Patanzo P.A.
1700 East Las Olas Blvd., Suite 202
Fort Lauderdale, Florida 33301
(954) 779-1700
Jamie@BenjaminAaronson.com
Fla. Bar No.: 293245
*Attorney  for Gregory Good*


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was filed with the CM/ECF system and that a copy was furnished, through the system, to all parties of record, this  14th day of August, 2023.

/s/ James S. Benjamin
JAMES S. BENJAMIN